UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION



FILED
SEP 08 2006

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| ROBERT BELT, | * | CIV. 05-4022 |
| Plaintiff, | * | |
| vs. | * | MEMORANDUM OPINION AND ORDER |
| MICHELLE BOYD, Warden, Minnehaha County Jail; HELEN KELLEN; JUNE ODENS; LT. DEVLIN; SGT. ARNTZ; C.O. CARLSON; RANDY DERAAD, Med. Staff; all in their official and individual capacities, | * | |
| Defendants. | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

Defendants filed Motions for Summary Judgment, Docs. 55 and 63. Plaintiff did not file a response to Defendants' motions, but his Complaint is a verified complaint. For the reasons set forth below, the motions will be granted. In a letter dated February 25, 2006, and filed on March 2, 2006, Doc. 62, Plaintiff requested a complete copy of his medical records and pill-line sign-off sheets between the dates of November 24, 2004 and February 20, 2005. The Court directed Defendants to inform the Court whether the Minnehaha County Jail has medical records related to Plaintiff's claims in this action that have not been produced to Plaintiff in discovery or filed in support of their summary judgment motions. Defendants Randy DeRaad, Helen Kellen and June Odens informed the Court that Plaintiff had not previously received the over-the-counter medication logs for the months of November and December 2004 and January 2005. (Doc. 74.) Those logs were filed in this action with Defendants DeRaad, Kellen and Odens' Supplement to the record, Doc. 74, and were produced to Plaintiff on May 4, 2006. Plaintiff has not submitted any additional evidence or argument after receiving the records from Defendants on May 4, 2006. There being no additional

medical records or pill-line sign-off sheets between the dates identified by Plaintiff that have not been provided to Plaintiff, the motion will be denied as moot.

The Court held an evidentiary hearing on July 31, 2006 for the purpose of receiving evidence on two questions: 1) What was Dr. Kappenman's prescription for pain medication for Plaintiff on January 31, 2005 through February 22, 2005; and (2) Did Plaintiff receive pain medication from January 31, 2005 to February 22, 2005 in accordance with his prescriptions. Plaintiff appeared in person at the hearing. Defendants Michelle Boyd, Lt. Devlin, Sgt. Arntz and Correctional Officer Carlson were represented by their attorney, Jennifer Wollman. Defendants DeRaad, Kellen and Odens were represented by their attorney Michael Tobin.

## BACKGROUND

Plaintiff is currently a 39 year old male inmate in the Federal Prison Camp in Duluth, Minnesota. The claims in this action under 42 U.S.C. § 1983, relate to Plaintiff's incarceration in the Minnehaha County Jail ("County Jail") in Sioux Falls, South Dakota. Plaintiff was a federal inmate housed in the County Jail pursuant to a contract between it and the United States Marshal's Service. The Marshal's Service was responsible for scheduling dental appointments for Plaintiff and for transporting him to those appointments.

Several Defendants are named in this action. Michelle Boyd was the Warden of the County Jail at the times relevant to Plaintiff's claims. She is currently employed as the Assistant Sheriff of Minnehaha County. Defendant Devlin was a Lieutenant at the County Jail at the relevant times. He is currently the Warden of the County Jail. Defendant Arntz is a Sergeant employed at the County Jail. Defendant Carlson is employed as a Correctional Officer at the County Jail. Defendant Randy DeRaad is a Registered Nurse and he was the Correctional Health Nurse Manager at the County Jail at the times relevant to Plaintiff's claims, and had been in that position since August 2004. Defendant June Odens is a Licensed Practical Nurse and at the relevant times she worked at the County Jail as a Correctional Medical Technician/LPN, which position she had held since January

2

2003. Defendant Helen Kellen is a Licensed Practical Nurse and at the relevant times was a Correctional Medical Technician/LPN at the County Jail, which position she had held since November 2001.

Plaintiff was first incarcerated in the County Jail on November 24, 2004. Before Plaintiff's incarceration, he had used methamphetamine for several years, which can cause dental decay and deterioration. He experienced abscessed and broken teeth and had been treated by several dentists, including some tooth extractions, before he was incarcerated. The first notation in the County Jail medical records regarding Plaintiff's teeth was on November 25, 2004, when Plaintiff was seen by a jail nurse and the nurse noted that "teeth is U[nited] S[tates] M[arshal] will have them notified." (Doc. 56-4 at 1.) The first medical record that states Plaintiff complained of a "toothache" was on December 1, 2004. (*Id.*). The next record of a dental complaint was on December 31, 2004, during sick call when Plaintiff asked if he could receive stronger pain medication than the Extra Strength Tylenol that he was receiving. (*Id.* at 2.) The on-call physician, Dr. Knutson, prescribed Lor-Tab to be taken every six hours for pain. (Doc. 56-3 at 10.) On January 2, 2005[1], Plaintiff again complained of dental pain during sick call and Defendant Odens informed Plaintiff she would call Dr. Kappenman, a dentist, for orders. (Doc. 56-4 at 3.)

On January 8, Plaintiff asked that the Lor-Tab prescription be refilled. (Doc. 56-4 at 3.) Plaintiff was again seen by a nurse on January 10, complaining of increased dental pain and asking to see a dentist. (*Id.*) A January 10, fax to the United States Marshal is the first record of the Marshal being informed of Plaintiff's dental pain and need to see a dentist. (Doc. 56-3 at p. 11.) Plaintiff was seen again on sick call at the County Jail on January 12, and continued to complain of dental pain. (Doc. 56-3 at 12.) The doctor noted that Plaintiff had "extremely poor dentition," recommended he see a dentist and prescribed Darvocet for pain. (*Id.*) A second fax was sent to the United States Marshal stating that Plaintiff had been seen in the Jail clinic for dental pain and that

---

[1] All references in this opinion to the months of January, February and March are in the year 2005.

3

the doctor recommends Darvocet for pain and to see a dentist as soon as possible. (Doc. 56-3 at 13.) Dr. Kappenman, a dentist, examined Plaintiff on January 13, and gave him a prescription for antibiotics. (Doc. 56-3 at 7 and 58.)

Plaintiff was next seen in the Jail clinic on January 18, complaining that the pain medication was upsetting his stomach and requesting that it be changed. (Doc. 56-4 at 4; Doc. 56-3 at 18.) Darvocet was given to Plaintiff through January 20, at the rate of 5 to 6 pills per day, but then it was discontinued. (Doc. 56-5 at 4.) A 10-day prescription for Naproxen was written on January 20, by Dr. Scott Dierks, the County Jail doctor. (Doc. 56-3 at 18.) Plaintiff filed three grievances after the Darvocet prescription was discontinued and requested additional pain medication. (Doc. 56-6 at 4-6.) On January 25, Plaintiff received 4 Darvocet pills and on January 26, he received one Darvocet pill at 3:20 a.m. and one at 7:19 a.m. (Doc. 56-5 at 6.)

On January 26, Dr. Kappenman extracted 22 of Plaintiff's teeth. (Evid. Hrg. Ex. A[2].) Dr. Kappenman prescribed 18 pills of Tylenol # 3 to treat Plaintiff's pain from the extractions and ordered that the Darvocet prescription be discontinued. (Doc. 56-3 at 20, 58; Evid. Hrg. Ex. A.) He received all 18 pills of Tylenol # 3 on January 26 through 29. (Doc. 56-5 at 7.) A soft diet was ordered on January 26 and then on January 28, it was changed to a liquid diet. (Doc. 56-3 at 21, 22.) Dr. Kappenman was contacted on January 31 because Plaintiff's Tylenol #3 prescription had expired and Plaintiff was still in pain. *See* DeRaad's Affidavit, Doc. 68, Ex. F (entry on January 31, it states, "needs pain pills 22 teeth pulled last week and his tylenol #3 ran out called kappenman for ok to restart darvocet meds taken to floor today.") On Exhibit G to DeRaad's Affidavit it is explicitly noted by nurse Carlson that on January 31, Dr. Kappenman prescribed Darvocet, one tablet every four hours as needed for pain. (Doc. 68, Ex. G; Evid. Hrg. Ex. D.) The prescription for Darvocet for one pill every four hours as needed for pain was also recorded on the medication log. (Doc. 83-2 at 1.) But on the evening of January 31, the medication policy was changed at the County Jail and

---

[2]The references to "Evid. Hrg. Ex." are to exhibits received during the July 31, 2006, evidentiary hearing.

4

Plaintiff did not receive his Darvocet prescription until 2:25 p.m. on February 1. (Evid. Hrg. Ex. B; Doc. 83-2[3].)

The medication policy before the change on January 31 was that the inmates' prescriptions were kept in the dorm area in the correctional officer's desk. The officers would distribute the medication to the inmates at the required times and record it on a medication log. The change to the policy required that all medications be kept by the medical staff and placed on a locked cart that would be delivered to the dorm area for correctional officers to dispense to the appropriate inmates. The cart was stocked each day by the medical staff. To facilitate this change, all inmates' prescriptions were collected and removed from the cell block area on January 31.

At 1:00 a.m. on February 1, Plaintiff asked Defendant Correctional Officer Carlson for his pain medication. Defendant Carlson called the Jail nurse, who informed Carlson that Plaintiff would not receive pain medication that evening pursuant to the new policy and a change in his prescription. The record clearly shows, however, that the prescription given by Dr. Kappenman on January 31, would have allowed Plaintiff to receive Darvocet every four hours as needed for pain. (Evid. Hrg. Ex. D.) There was no restriction noted in the nurse's medical report or the medication log to prevent Plaintiff from receiving Darvocet or its generic form in the nighttime hours. (Evid. Hrg. Ex. B and D; Doc. 83-2.) The medication log does not show that Plaintiff received any Darvocet on January 30 or 31. (Doc. 56-3 at 6.) The first indication that Plaintiff received Darvocet in accordance with Dr. Kappenman's January 31 prescription is on February 1, at 2:25 p.m. (Evid. Hrg. Ex. B; Doc. 83-2 at 1.) The original medication log shows the January 31, prescription for "Propoxy," which is the generic for Darvocet. (Doc. 83-2 at 1.) Dr. Kappenman testified at the hearing that his prescription

---

[3]Exhibit B received at the hearing was a copy of the original medication log and a portion of the left-hand side of the original was cut off in the copying process. The same copy of the medication log was attached as Exhibit H to Defendant DeRaad's Affidavit (Doc. 68-9.) During the evidentiary hearing on July 31, 2006, the Court directed Defendant DeRaad's counsel to provide the original medication log to the Court the following morning. In accordance with the Court's direction, counsel filed an Affidavit on August 1, 2006, and attached Plaintiff's original medication log for the month of February 2005. (Doc. 83.)

was one tablet every four hours as needed for pain. The phrase "as needed for pain" is abbreviated "prn." It appears from the original prescription log that the description of the January 31, prescription was written by nurse T. Carlson, as indicated by the blue ink used in that description and in nurse Carlson's signature towards the bottom of the log. (Doc. 83-2 at 1.) In the section labeled "Time", it appears nurse Carlson wrote in "prn" and gave Plaintiff his first dose of Propoxy at "1425," which is 2:25 p.m. on February 1. (Doc. 83-2 at 1.)

Defendant DeRaad, the Correctional Health Nurse Manager at the County Jail described Dr. Kappenman's January 31 prescription as follows:

> Instead of it being one pill every four to six hours as needed for pain, Dr. Kappenman ordered that Mr. Belt receive a pill every four hours not to exceed four pills in any twenty-four hour time period. This change resulted in Mr. Belt not being able to take Darvocet pills in the nighttime hours. Mr. Belt could, however, continue to take [over-the-counter] pain medications such as extra strength Tylenol and Ibuprofen.

DeRaad Affidavit, Doc. 68 at ¶ 21. DeRaad further states in his Affidavit that Dr. Kappenman's orders were that Plaintiff was to receive one Darvocet pill at four specific times of the day, i.e., 8:00 a.m., 12:00 p.m., 5:00 p.m. and 9:00 p.m. DeRaad Affidavit, Doc. 68 at ¶ 24. DeRaad's description of Dr. Kappenman's January 31 prescription is incorrect and he admitted at the evidentiary hearing that paragraph 21 of his Affidavit was incorrect. DeRaad further admitted at the hearing that Dr. Kappenman's January 31 prescription was clear that Plaintiff was to receive one Darvocet pill every four hours as needed for pain and there was no restriction on Plaintiff receiving Darvocet in the overnight hours.

Defendant Kellen submitted an Affidavit, in which she stated she was not aware of Dr. Kappenman's January 31 prescription when she began her shift at 7:00 a.m. on February 1, but she gave Plaintiff a Darvocet pill at approximately 9:30 a.m. that day, after learning of the new prescription. There is no written notation on Plaintiff's medication log that Kellen dispensed Darvocet to Plaintiff at 9:30 a.m. on February 1. (Doc. 83-2 at 1.) Rather, the first written notation

6

of Plaintiff receiving Darvocet in compliance with Dr. Kappenman's January 31 prescription is at 2:25 p.m. on February 1 by nurse Carlson. (Doc. 83-2 at 1.)

Defendant Odens submitted an Affidavit stating that when she was collecting the medications on January 31, to implement the new system, Plaintiff was upset with the new system. (Doc. 67.) She further stated Plaintiff took his pain medication on January 31. There is no record of Plaintiff being given prescription pain medication on January 31. The over-the-counter pill records show that Plaintiff was given two Extra-Strength Tylenol at 11:30 a.m. and 7:15, but it is not clear from the record whether it was 7:15 a.m. or 7:15 p.m. Odens stated that after she saw Plaintiff on January 31, she was not contacted by anyone regarding Plaintiff's complaints of pain through February 1.

Plaintiff's sutures were removed on February 2, without incident. (Doc. 56-3 at 27.) The next complaint of pain from Plaintiff was on February 3. (Doc. 56-3 at 28.) DeRaad testified the medical staff was confused regarding the January 31 prescription. DeRaad did not testify who on the medical staff was confused about the January 31 prescription. Defendants Kellen and Odens did not state in their Affidavits that they were confused about Dr. Kappenman's January 31 prescription. Due to the confusion DeRaad testified about, DeRaad directed a County Jail Nurse, Al Penning, to contact Dr. Kappenman on February 3, to clarify his prescription. (DeRaad Affidavit, Doc. 65 at ¶ 50; Doc. 56-3 at 28.) The question was whether Dr. Kappenman had prescribed Darvocet to be given every four to six hours as needed by Plaintiff for pain or, rather, that it be given only four times during the daytime hours. (*Id.* at ¶ 51.) Dr. Kappenman changed the prescription from every four hours as needed for pain to "qid," which means four times during the day.) On February 3, Plaintiff received two Propoxy pills and one Darvocet pill. On February 4, Plaintiff received three or four Propoxy or Darvocet pills. On February 5, Plaintiff received four or five Propoxy or Darvocet pills. On February 6, Plaintiff received five Propoxy or Darvocet pills. None of the Propoxy or Darvocet pills were given in the overnight hours.

7

On February 7, Plaintiff's prescription for Darvocet had run out and he asked that it be refilled. The doctor on call refused to order any prescription pain medication and deferred to Dr. Kappenman for an evaluation. On February 10, Plaintiff was seen by Dr. Kappenman and no sign of infection was found. Dr. Kappenman prescribed 600 mg of Ibuprofen four times per day for five days, after which Plaintiff could use over-the-counter pain medications as needed. (Doc. 56-3 at 34.) After the February 10 examination by Dr. Kappenman, Plaintiff complained on March 11 that he had pain in his right upper gum. (Doc. 56-3 at 37.) The next appointment with Dr. Kappenman was on March 23, where Dr. Kappenman checked the progress of Plaintiff's healing and noted that his bone was "ok." (Doc. 56-3 at 58.) The medical records do not contain any additional complaints of dental pain by Plaintiff after the appointment with Dr. Kappenman on March 23.

Plaintiff contends he first complained of dental pain on the day of his admittance to the County Jail. He complains that he was in pain for six weeks and he couldn't properly eat or sleep and his mental health was falling apart from the constant pain. (Complaint at ¶ 5.) He acknowledges that the pain medication he was taking on January 21, was discontinued because he had complained to the medical staff about heartburn. On January 30, Plaintiff claims his prescription for pain medication ran out and he was taken off the list for any over-the-counter medications. On February 1, Plaintiff contends Defendant Carlson refused to give him his night medication because Defendant DeRaad changed the policy. He believes that DeRaad altered a dentist's prescription. He contends that all Defendants have ignored his serious medical needs and that they have routinely and deliberately denied him medical treatment. Pain and suffering from this denial of medical treatment has caused, according to Plaintiff, long term mental and emotional damage. As to the claim against Defendant Boyd, Plaintiff claims she is "responsible for all actions or inaction of her employees." The prayer for relief in Plaintiff's complaint is for a damage award of $100,000 against each individual Defendant for intentional infliction of pain and suffering and for $100,000 each for punitive damages. He also seeks a permanent injunction against the Defendants to prohibit them from inflicting cruel and unusual punishment by withholding needed medical care.

8

## DISCUSSION

In considering a motion for summary judgment, the Court asks the question whether the record, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56©. "Once the motion for summary judgment is made and supported, it places an affirmative burden on the non-moving party to go beyond the pleadings and 'by affidavit or otherwise' designate 'specific facts showing that there is a genuine issue for trial.'" *Commercial Union Ins. Co. v. Schmidt*, 967 F.2d 270, 271 (8th Cir. 1992) (quoting Fed.R.Civ.P. 56(e)). Simply creating a factual dispute cannot defeat a motion for summary judgment; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit. *See, e.g., Ghane v. West*, 148 F.3d 979, 981 (8th Cir. 1998). "A plaintiff's verified ... Complaint is the equivalent of an affidavit for purposes of summary judgment, and a complaint signed and dated as true under penalty of perjury satisfies the requirements of a verified complaint." *Roberson v. Hayti Police Dep't*, 241 F.3d 992, 994-95 (8th Cir. 2001) (citations omitted). If the allegations in the verified complaint consist of nothing more than conclusory allegations, however, they are insufficient to overcome a summary judgment motion. *See Roberson v. Bradshaw*, 198 F.3d 645, 647 (8th Cir. 1999).

Prison officials are prohibited by the Eighth Amendment from "unnecessarily and wantonly inflicting pain" on an inmate by acting with "deliberate indifference" to an inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "This conclusion does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* To prevail on a claim of deliberate indifference, under 42 U.S.C. §1983, a plaintiff must prove: (1) he suffered objectively serious medical needs; and (2) the prison officials actually knew but deliberately disregarded those needs. *See Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997). "To constitute an objectively serious medical need or a deprivation of that need, [the Eighth Circuit] has repeatedly emphasized that the need or the deprivation alleged must be either obvious to the layperson or supported by medical evidence, like a physician's diagnosis."

*Aswegan v. Henry*, 49 F.3d 461, 464 (8th Cir. 1995). "Deliberate indifference may be manifested by prison doctors in responding to the prisoner's needs or by prison officials in intentionally denying or delaying access to medical care or intentionally interfering with prescribed treatment." *Meloy v. Bachmeier*, 302 F.3d 845, 849 (8th Cir. 2002). "Mere negligence or medical malpractice, however, are insufficient to rise to a constitutional violation." *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997).

The first issue is whether Plaintiff suffered objectively serious medical needs. *See Coleman*, 114 F.3d at 784. Plaintiff missed several doses of prescription pain medication for dental pain. Some of the missed doses occurred before the extractions and several missed doses occurred after Plaintiff had 22 teeth extracted. Before the extractions, Plaintiff was suffering pain due to decayed and broken teeth. His teeth were in such bad condition that Dr. Kappenman extracted all of his remaining teeth on January 26. During the evidentiary hearing, Dr. Kappenman and Defendant DeRaad agreed that having 22 teeth extracted was traumatic. Plaintiff repeatedly submitted grievances describing the pain as excruciating and explained that he could not sleep due to the pain. Plaintiff was prescribed pain medication both before and after his teeth were extracted. The Court finds it was both obvious to a layperson and supported by medical evidence that Plaintiff suffered objectively serious medical needs both before and after his teeth were extracted. *See Aswegan*, 49 F.3d at 464 (explaining objectively serious medical need).

To address the second element of Plaintiff's deliberate indifference claim, the Court will examine the evidence against each of the Defendants to determine if there is a genuine issue of material fact that they knew of Plaintiff's serious medical needs but deliberately disregarded those needs.

## A.   Correctional Officer Carlson

Plaintiff asked Defendant Carlson for his pain medication at approximately 1:00 a.m. on February 1. Carlson informed the nurse in Jail Health Services that Plaintiff was requesting pain

10

medication. The nurse informed Carlson that Plaintiff could not receive his pain medication until the morning due to the new medication distribution policy and to a change in his prescription. A grievance submitted by Plaintiff on February 5, stated that Defendant Carlson also denied him medication. The record shows Defendant Carlson contacted medical staff regarding Plaintiff's complaints of pain and was told that Plaintiff was receiving his pain medication in accordance with the prescription. Defendant Carlson followed medical staff's directions and there is no evidence that Carlson was aware Plaintiff's prescription was not being followed. There is no evidence that Carlson denied or delayed Plaintiff's access to medical care or interfered with his prescribed treatment. *See Roberson v. Bradshaw*, 198 F.3d 645, 647 (8th Cir. 1999) (holding that prison officials can be held liable if they personally and intentionally deny or delay an inmate's access to medical care, or personally interfere with the prescribed treatment). Accordingly, Defendant Carlson is entitled to summary judgment on Plaintiff's claims against him.

### B. Sargent Arntz

Other than being named in the caption to this action, there are no allegations against Sargent Arntz in the Complaint. There is nothing in the record to support a finding of liability against Sargent Artnz. Thus, he is entitled to summary judgment on the merits of Plaintiff's claims.

### C. Warden Michelle Boyd

The first grievance addressed to Warden Boyd was dated February 3. (Doc. 56-6 at 13.) Plaintiff asked Warden Boyd why he was being denied his prescription medication. He informed Warden Boyd that he was in pain, that he could not eat or sleep and that he needed the pain medication. Warden Boyd responded on February 7, that, "[y]our prescription medication was only prescribed for the time period that you received the medication after having your dental work done, it is not a continuous prescription. I will have you seen in Jail D[octor] on Wed[nesday] to follow up since you are continuing to have pain." (Doc. 56-6 at 13.) Before Warden Boyd responded to Plaintiff's February 3 grievance, he submitted two grievances to the Sheriff and the medical staff on February 4, informing them that he was in pain and was not receiving his pain medication as

11

prescribed. (Doc. 56-6 at 15 and 16.) Warden Boyd responded to one of those grievances on February 7, stating that the medical staff informed her the prescription was finished and that he would be seen by the Jail doctor two days later on February 9. (Doc. 56-6 at 15.) On February 5, Plaintiff submitted an additional grievance to several people, including Warden Boyd, stating that he was continuing to suffer from pain and that he was being denied his prescribed pain medication. (Doc. 56-6 at 17.) Someone other than Warden Boyd responded to the February 5 grievance. (Doc. 56-6 at 17.) On February 6, Plaintiff submitted another grievance to the Sheriff and the medical staff stating that the night staff was denying his prescription medication, that he was in pain and that he could not sleep. (Doc. 56-6 at 18.) Warden Boyd responded to the February 6 grievance by referring to her February 7 response. (Doc. 56-6 at 18.)

Plaintiff seeks to impose liability on Boyd because she was the Warden. The Eighth Circuit has held, however, that a supervisor is only liable "'for an Eighth Amendment violation when the supervisor is personally involved in the violation or when the supervisor's corrective inaction constitutes deliberate indifference toward the violation.'" *Meloy*, 302 F.3d at 849 (quoting *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995)). Boyd was not personally involved in the distribution of Plaintiff's prescription pain medication. Although Boyd's responses to Plaintiff's grievances could have been sooner given the degree of pain Plaintiff described, Boyd did consult with medical staff regarding Plaintiff's prescription pain medication and learned that Plaintiff's prescription had expired. She then arranged for Plaintiff to see the Jail doctor to address his continued complaints of pain. There is no genuine issue of material fact that Boyd facilitated, approved, condoned or turned a blind eye to Plaintiff not receiving his prescription pain medication. *See Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995). Accordingly, Warden Boyd is entitled to summary judgment in this case.

### D. Lieutenant Devlin

The first grievance submitted to Defendant Devlin by Plaintiff concerning his tooth pain was on February 8, where Plaintiff complained of excruciating tooth pain and that he had been asking

12

to see a dentist but was getting the "runaround." (Doc. 56-6 at 3.) Plaintiff alleges Devlin had Defendant Kellen answer this grievance. Kellen informed Plaintiff that the United States Marshal's Service was aware of his dental needs and that they set up the dental appointments. (Doc. 56-6 at 3.) A dentist appointment was then scheduled for January 13, by the Marshal's Service. Plaintiff submitted a grievance to the medical staff and the Sheriff on January 22, complaining that he had repeatedly requested to get his pain killers back, but the medical staff showed no concern for his pain. Although the signature of the person who responded to Plaintiff's January 22 grievance is not legible, Plaintiff contends that Devlin responded to this grievance and Devlin does not disagree that he authored the response. The response is dated January 25, and states that Devlin checked with the medical supervisor and was told that Plaintiff was again receiving his prescribed medications. (Doc. 56-6 at 6.) The January 22 grievance related to the occasion when Plaintiff complained to the medical staff about the pain medication causing him heartburn and it was discontinued for a period of time.

Although Defendant Devlin could have been quicker in his response time due to the high level of pain Plaintiff was in, Devlin was not responsible for dispensing pain medication to Plaintiff and he followed up with the medical staff on each occasion that he responded to Plaintiff's grievances. There is no evidence that Devlin interfered with Plaintiff's prescribed treatment or that he denied or delayed Plaintiff's access to medical care. *See Roberson*, 198 F.3d at 647. Moreover, there is no evidence that Devlin facilitated, approved, condoned or turned a blind eye to a violation of Plaintiff's constitutional rights. *See Boyd*, 47 F.3d at 968 (standard for supervisory liability). The Court does not find there is a genuine issue of material fact that Defendant Devlin was deliberately indifferent to Plaintiff's serious medical needs.

### E.  Randy DeRaad

Defendant DeRaad is the supervisor of the nurses at the County Jail. Plaintiff submitted a grievance to DeRaad on January 7, where Plaintiff informed DeRaad his tooth pain was debilitating and that he had been requesting to see a dentist since November but had not yet seen one. (Doc. 56-6

13

at 2.) The response to the January 7 grievance was that Plaintiff had gone to the dentist on January 13. (Doc. 56-6 at 2.) The next two grievances addressed to the medical staff were dated January 21, where Plaintiff was complaining about a change in his medication from Propoxy to Naproxen and stating that he would rather suffer from heartburn from the Propoxy than suffer from his tooth pain. (Doc. 56-6 at 4 and 5.) DeRaad answered these grievance on January 24, by stating that Plaintiff's pain medication was available at the officer's desk as Plaintiff needed it for pain. (Doc. 56-6 at 4 and 5.) On January 31, Plaintiff submitted a grievance to the medical staff informing them that his prescription was for every four hours, not just when the medical staff had time to dispense his medication. (Doc. 56-6 at 8.) On February 2, DeRaad answered the January 31 grievance by stating the issue should be resolved. (Doc. 56-6 at 8.)

In a grievance dated February 1, Plaintiff quoted the inmate handbook that the medical staff will administer prescription medications according to the prescription and stated that he was in extreme pain from his teeth extractions and had not received pain medication for over 12 hours. (Doc. 56-6 at 9.) DeRaad answered this grievance on February 2, by stating the issue should now be resolved. In a second grievance dated February 1, Plaintiff asked why his medication had been changed from every four hours and again informed the medical staff he was in pain. (Doc. 56-6 at 10.) DeRaad answered this grievance on February 6, informing Plaintiff that the dentist was contacted "for medication clarification," and that Plaintiff would be seen in the Jail clinic to assess his medical needs. (Doc. 56-6 at 10.) Before DeRaad answered the February 1 grievance, Plaintiff filed another grievance on February 5, again complaining that he was not receiving his prescription pain medication according to the prescription. (Doc. 56-6 at 17.) DeRaad responded on February 7, that Plaintiff would be seen in the Jail clinic to assess his needs.

Although the Court finds this a close call, the Court does not find a genuine issue of material fact for trial on Plaintiff's claim against DeRaad. From at least January 7 to February 5, Plaintiff repeatedly submitted grievances to DeRaad and the medical staff informing them that his teeth were causing excruciating pain and he was not receiving medication on a consistent basis to alleviate that

14

pain. DeRaad did not dispense Plaintiff's medications, but Plaintiff repeatedly communicated in the grievances that the medical staff was failing to follow Dr. Kappenman's prescriptions, especially on January 31 through February 3. DeRaad responded to the majority of Plaintiff's grievances to the medical staff. Thus, it appears from the record DeRaad was aware of Plaintiff's claim that he was not receiving his pain medication as prescribed and that he was suffering from the pain.

The Court does not find evidence of a failure to comply with Dr. Kappenman's prescriptions before January 31, or after he changed the prescription on February 3. A cursory review of the medication logs and Plaintiff's prescriptions from January 31 to February 3, however, shows that the Jail medical staff was not following Dr. Kappenman's prescription for Plaintiff's pain medication during that time. Dr. Kappenman ordered on January 31 that Plaintiff be given one Darvocet pill every four hours as needed for pain, which meant he could have six Darvocet pills in each 24-hour time period. DeRaad testified that "Propoxy" is the generic medication for Darvocet. The medical records do not show that Plaintiff received any Darvocet or its generic form on January 31. (Doc. 83-2.) On February 1, Plaintiff only received two or three Propoxy pills, with the first one being at 2:25 p.m. (Doc. 83-2.) On February 2, Plaintiff received two or three Propoxy pills. (Doc. 83-2.) On February 3, Plaintiff received two Propoxy pills and one Darvocet pill.

DeRaad testified that some of the nurses were confused about Dr. Kappenman's January 31 prescription, but he admitted the prescription was "clear as a bell." He never testified that he was confused about Dr. Kappenman's January 31 prescription, which would have allowed Plaintiff to receive prescription pain medications around the clock every four hours from January 31 to mid-afternoon on February 3. But there is no evidence that DeRaad was personally involved in dispensing prescription medications to Plaintiff. Thus, to hold DeRaad liable in this case as a supervisor, Plaintiff would need to prove that DeRaad knew about the failure to comply with Dr. Kappenman's prescription and that he facilitated it, approved it, condoned it, or turned a blind eye to it. *See Meloy*, 302 F.3d at 849. While DeRaad could have acted sooner given Plaintiff's complaints of how much pain he was in, the Court does not find any evidence in the record that he

15

facilitated, approved, condoned or turned a blind eye to the failure to comply with Dr. Kappenman's prescription from January 31 to February 3. This conduct amounted to negligence or at the most, gross negligence, for failing to act sooner and failing to explain Dr. Kappenman's January 31 prescription to his subordinates, which is insufficient to impose liability for a constitutional violation. *See Gibson v. Weber*, 433 F.3d 642, (8th Cir. 2006) (explaining that "[a] showing of deliberate indifference is greater than gross negligence ....").

To the extent Plaintiff's claims are characterized as a delay in providing medical care, this case is distinguishable from the cases in which the Eighth Circuit has found a delay in providing dental care was actionable under the Eighth Amendment. *See Boyd*, 47 F.3d at 969 (holding that "[a] three-week delay in dental care, coupled with knowledge of the inmate-patient's suffering, can support a finding of an Eighth Amendment violation under section 1983."); *Patterson v. Pearson*, 19 F.3d 439, 440 (8th Cir. 1994) (material issue of fact existed as to whether approximately three-week delay in providing dental care for inmate with infected tooth established Eighth Amendment violation); *Fields v. Gander*, 734 F.2d 1313 (8th Cir. 1984) (failure to provide dental care for three weeks despite jailer's knowledge inmate was suffering severe pain was actionable and summary judgment in favor of jailer was reversed); *King v. Busby*, 162 Fed.Appx. 669 (8th Cir. 2006) (unpublished) (failure to distribute prescribed blood-pressure and pain medication at least 26 times over an approximate seven month period, "without further explanation at least raises an inference, that the failure to provide King's medication was more than an 'inadvertent failure to provide adequate medical care.'"). While the delays in receiving pain medication caused Plaintiff pain, neither the length of the delay nor the severity of the pain are as extensive as the delays and pain involved in the above-cited Eighth Circuit cases. Accordingly, summary judgment will be entered in favor of DeRaad on Plaintiff's claims.

## F. Helen Kellen

In his Complaint, Plaintiff alleges Kellen responded to a January 8, grievance that Plaintiff had submitted to Lieutenant Devlin. Kellen does not deny she wrote the response to that grievance.

16

In the grievance, Plaintiff complained that he had repeatedly requested to see a dentist, but he kept getting the "runaround." (Doc. 56-6 at 3.) He informed Devlin that his tooth pain was excruciating and that he could not get any pain killers for the pain. (Doc. 56-6 at 3.) Kellen responded that the Marshal's Office was aware of his dental needs and that, "[t]hey will set up any dental app[ointment]." (Doc. 56-6 at 3.) In her Affidavit, Defendant Kellen described her first contact with Plaintiff occurring on January 12, when she received a prescription for Plaintiff from the on-call physician for Darvocet. She advised the Marshal's Service of this prescription and also advised them that Plaintiff needed to see a dentist. There is no evidence of Kellen denying or delaying Plaintiff's access to medical care or interfering with a prescription relating to the above contacts with Plaintiff.

On January 31, she helped other staff members with the planned changes to the medication distribution system. She stated she was never informed by anyone that Plaintiff was in pain or that he was requesting pain medication. (Doc. 66 at ¶ 7.) She began her shift on February 1, at 7:00 a.m. and there is no evidence to show that Kellen was the nurse consulted by Defendant Carlson during the early morning hours of February 1. There is no evidence in the record that Kellen was aware of Dr. Kappenman's prescription for Darvocet when she began her shift. At 9:30 a.m., she learned of Dr. Kappenman's prescription and that Plaintiff did not believe he received his pain medication that morning. She states that Plaintiff received a Darvocet at 9:30 a.m. on February 1. (Doc. 66 at ¶ 8.) The medication log, however, does not support Kellen's statement that Plaintiff received a Darvocet at 9:30 a.m. on February 1. (Doc. 83-2.) Rather, the log shows that the first Darvocet was given to Plaintiff at 2:25 p.m. on February 1. (Doc. 83-2.) The Court does not find this dispute of fact is material, however, because failure to administer a prescription one is unaware of is at most negligence and negligence is not sufficient to state an Eighth Amendment violation. *See Dulany*, 132 F.3d at 1239. The Court does not find there is a genuine issue of material fact that Kellen knew of Plaintiff's serious medical needs but deliberately disregarded those needs.

17

### G.     June Odens

On January 10, Defendant Odens notified the Marshal's Service that Plaintiff was having increased dental pain and wanted to see a dentist as soon as possible. (Odens Affidavit, Doc. 67-1.) She again contacted the Marshal's Service on January 12 after the Jail doctor recommended Plaintiff see a dentist. There is no evidence that Odens denied or delayed Plaintiff's access to medical care on January 10 or 12.

Odens worked at the Jail on January 31 when the medical staff was preparing to implement the new medication distribution policy the next day. She informed Plaintiff what the new policy would be and he was upset. She states that Plaintiff took his pain medication at that time, but she did not indicate if it was prescription or over-the-counter medication. The medication logs do not show that Plaintiff was given any Darvocet on January 31, but it was nurse Carlson that took the prescription from Dr. Kappenman on January 31 and there is no evidence that Odens was aware of this prescription. Odens further states that she was not contacted by anyone regarding complaints of pain by Plaintiff after she saw Plaintiff on January 31 and through February 1. There is no evidence in the record to show that Odens was contacted on January 31 through February 1.

Odens' next involvement with Plaintiff was on February 4 when she was contacted shortly after midnight by a correctional officer who reported that Plaintiff was demanding pain medication. She states that she told the officer Plaintiff had received his pain medication in compliance with his prescription earlier in the evening and that Plaintiff could not receive another prescription pain pill until the morning. She also informed the officer that Dr. Kappenman changed Plaintiff's prescription from a pain pill every four to six hours as needed to Plaintiff receiving it at four set times during the day. Pursuant to Dr. Kappenman's changed prescription, Plaintiff was allowed to have a Darvocet pill at the last medication pass of the day. (Doc. 83-2.) The medication log shows that the last dose of Darvocet received by Plaintiff was at 6:00 p.m. on February 3. (Doc. 83-2.) Thus, when Odens received the call just after 12:00 a.m. on February 4, Plaintiff had not received a Darvocet pill since 6:00 p.m. on February 3, when he could have received one more pill on that

18

date. Even assuming, however, that Odens failed to recognize Plaintiff did not receive one of his prescribed doses of Darvocet on February 3, this conduct would amount to negligence, or at most, gross negligence, which is not actionable under the Eighth Amendment. *See Dulany*, 132 F.3d at 1239. The Court does not find a genuine issue of material fact that Odens knew of Plaintiff's serious medical needs but deliberately disregarded those needs.

## CONCLUSION

Although it was certainly unfortunate that Plaintiff endured unnecessary pain as a result of having 22 teeth extracted and not receiving all of the pain medication that was prescribed for him, both as to the number of pills as well as the time of dispensing those he did receive, the Court considered Plaintiff's claims against each of the individual Defendants and found an absence of a genuine issue of material fact on Plaintiff's claims against each of the Defendants. The only evidence of failure to comply with a prescription was from January 31 to February 3. None of the Defendants who dispensed medication to Plaintiff were shown to have been responsible for more than a couple of missed doses of medication and there was no evidence to show that any of the supervisors facilitated, approved, condoned or turned a blind eye to the failure to comply with Dr. Kappenman's prescription. Thus, the Defendants are entitled to summary judgment. The jail-wide change of the method of distributing medications contributed to these unfortunate failures. The method change is not an excuse, but it is relevant when considering whether there is any showing of deliberate indifference to Plaintiff's serious medical needs. There is no such showing. Accordingly,

IT IS ORDERED:

1. That Defendants' Motions for Summary Judgment, Docs. 55 and 63, are granted.

2. That Plaintiff's Motion for Copies, Doc. 62, is denied as moot.

Dated this __8th__ day of September, 2006.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
By:_____, Deputy
(SEAL)

20